City of Chicago v. Bullis.

*Affirmed.*

---

## City of Chicago et al. v. Walter Bullis.

### Gen. No. 12,165.

1. CERTIORARI—*lies to review proceedings of Civil Service Commission.* *Certiorari* lies to review the proceedings of the Civil Service Commission.

2. PATROLMAN—*when discharge of, by Civil Service Commission proper.* Where a patrolman is charged in writing with conduct unbecoming an officer and after trial is found guilty "as charged," the mere fact that the charge against such officer included the violation of a rule the existence of which does not appear, does not vitiate the proceedings.

3. PATROLMAN—*when laches in presenting charges against, does not appear.* The defense of laches in presenting a charge against a patrolman is not established where it does not appear when knowledge of the patrolman's misconduct came to the official preferring the charge.

4. CIVIL SERVICE COMMISSION—*how far rule of, binding upon.* A valid rule adopted by the Civil Service Commission is as binding upon it as a positive statutory regulation.

5. CIVIL SERVICE COMMISSION—*when without jurisdiction to try patrolman.* Where it does not appear that notice of the trial was given as provided by a valid rule adopted by the commission, the commission is without jurisdiction to try the accused.

*Certiorari* proceeding. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed December 14, 1905.

JOHN W. BECKWITH, Assistant Corporation Counsel, for appellants; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

A. D. GASH and JAMES H. HOOPER, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The appellee filed a petition January 16, 1904, averring substantially as follows: That for ten years last past he has been a citizen of the city of Chicago, and during said time has been and now is a police patrolman in the police department of the city, at the salary of $1,000 per annum. Said position is a position or office in the classified civil service of the city. Petitioner took examination for said position, passed, and was duly certified for and appointed to said office of patrolman. October 21, 1903, the superintendent of police of said city filed with the Civil Service Commission of the city the following charges:

Violation of rule 54 of the rules and regulations of the department of police: "Receiving or accepting any fee, reward, or gift, of any kind, from any person arrested, or from any friend in his behalf, while in custody, or after his discharge, or from any person, without the consent of the general superintendent of police."

Violation of rule 67 thereof: "Immoral conduct or conduct unbecoming a police officer."

City of Chicago v. Bullis.

January 15, 1904, the police trial board found petitioner guilty as charged, and .that he should be removed from the police department by the superintendent of police, and on the same day the Civil Service Commission approved said findings, and decided that petitioner should be removed as aforesaid, and said superintendent of police, the same day, notified petitioner that he had been permanently removed from the service of the city, since which time petitioner has received no salary.

It is not provided by any of the rules of said commission, or of the rules governing the police department, that the commission of such offense as charged shall work the discharge of a patrolman. The Civil Service Commission had no jurisdiction to hear said charges, and the order of the superintendent of police discharging petitioner is void. Petitioner is not guilty of the infraction of any rule of the Civil Service Commission, or of the police department, or of any rule governing patrolmen, or of any order or direction of the superintendent of police. The petition concludes with a prayer for the writ of *certiorari,* to be directed to the Civil Service Commissioners, naming them, to their secretary, naming him, and to the city of Chicago.

A writ was issued, directed to the Civil Service Commissioners, to which they made the following return:

"Return of Joseph Powell, Joseph W. Errant and Christian Meier, Civil Service Commissioners of the City of Chicago: That on, to-wit: December 11, 1903, the following written charges were preferred against Walter Bullis, rank patrolman:

'I hereby request that the following charges against Walter Bullis, rank patrolman of the twenty-seventh precinct, be investigated by the Commission, or by a board or officer appointed by the Commission, and proper action be taken under the provisions of Section 12 of the Civil Service Act, and the rules adopted in pursuance thereof.

CHARGES.

Conduct unbecoming an officer, and violation of Rule 54.

### SPECIFICATIONS.

Extorting money from Scott Harrison under threats of arrest for running an opium joint, unless such payments were made to him. Time, about November, 1901. Place, 19 South Green street.

### WITNESSES.

For Complaint.                          For Defense.
Name.           Address.        Name.           Address.
Scott Harrison, No. 2920 Dearborn Street.
                        Respectfully submitted
                        (Signed)   FRANCIS O'NEILL,
                        General Superintendent of Police.

RECEIVED
Jan. 15, 1904.
Served copy of within charges on the within named Walter Bullis this 11th day of December, 1903.
                        (Signed)   D. O'CONNOR,
                        Twenty-seventh Precinct.

### FINDINGS AND DECISION.

Upon investigation of within charges we find said Walter. Bullis guilty as charged, and decide that he be dismissed from the Police Department and the service of the City of Chicago by the General Superintendent of Police.
                        (Signed)   JOSEPH POWELL,
                        C. MEIER.

APPROVED,
    Jan. 15, 1904.
        Civil Service Commission,
                        (Signed)   J. P.'

That thereafter, to-wit: on the 15th day of January, 1904, the finding and decision of the said Trial Board appointed by said Commission, after approval by said. Commission, was certified to the head of the department in words and figures as follows, to-wit:

Chicago, January 15, 1904.

MR. FRANCIS O'NEILL,

General Superintendent of Police.

Dear Sir: I hereby certify that the following is a true and correct copy of the findings and decision of the Police Trial Board *in re* Walter Bullis, patrolman twenty-seventh precinct, and that the same has been approved by the Civil Service Commission, as follows, to-wit:—

'Walter Bullis, patrolman twenty-seventh precinct: The Police Trial Board finds said Walter Bullis guilty as charged and decides that he be dismissed from the Police Department and from the service of the City of Chicago, by the General Superintendent of Police, for violation of Rule 54.'

By order of the Commission.

T. J. CORCORAN,
Secretary.' "

The return then sets out sec. 1 of rule 8 of the Civil Service Commission, providing how charges under sec. 12 of the Civil Service Act shall be made, and before whom they shall be tried, for notice to the accused, etc., and certain resolutions and orders passed by the commissioners prior to the filing of the charges against appellee, next following which resolutions and orders is the following certificate:

"State of Illinois, }
County of Cook. } ss.

I, Timothy J. Corcoran, Secretary of the Civil Service Commission of the City of Chicago and keeper of the records and files thereof in the State aforesaid, do hereby certify that the above and foregoing is a true, perfect and complete record of the proceedings of the Civil Service Commission of the City of Chicago in and about the discharge and removal of Walter Bullis from the position of patrolman or police officer of the City of Chicago, and that the above and foregoing comprises all the proceedings, records, papers and files in the aforesaid matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal at Chicago, in said county, this 30th day of January, A. D. 1904.

TIMOTHY J. CORCORAN,
Secretary of the Civil Service Commission of the
City of Chicago."

The judgment of the court is as follows:

"This cause coming on to be heard on final hearing, on petition of plaintiff and answer of respondents herein, and petitioner and respondent being represented by counsel in open court, and the court being fully advised in the premises, doth find that the proceedings of the Civil Service Commissioners set out in the petition and return should be quashed. It is, therefore, ordered that the proceedings of the Police Trial Board and the Civil Service Commissioners on January 15, 1904, in and about the discharge of Walter Bullis, be and the same are hereby quashed and held for naught."

Counsel for appellants contend that *certiorari* does not lie in such a case as the present, that it lies only to inferior tribunals exercising judicial functions, and that the act to be reviewed must be judicial in its nature and not merely ministerial or administrative. Counsel also contend that the test of whether the inferior body or officer was acting judicially, is whether it acted in the determination of property rights. In Kinsloe v. Pogue, 213 Ill., 362, the court say: "The law is too well settled in this jurisdiction to be now questioned, that the Circuit Courts of this State may award the common law writ of *certiorari* to all inferior tribunals and jurisdictions within the State, where it appears that they have exceeded the limits of their jurisdiction, and no appeal is allowed, or other mode is provided by law for reviewing their proceedings," citing numerous cases. This statement of the law contains no exception or qualification, beyond the limitation to cases in which no other mode of review is provided by law. The case related to the removal of a county seat, and no property right was involved. Counsel cite Commissioners, etc., v. Griffin, 134 Ill., 330, and rely on this language in the opinion: "The body or officers acting need not constitute a court of justice in the ordinary sense. If they are invested by the legislature with the power to decide *on the property rights of others,* they act judicially in making their decision, whatever may be their public character." Ib., 341. The case involved the question of the enlarge-

ment of a drainage district, by taking therefor adjacent lands. Therefore, property rights were involved and the language quoted was strictly applicable to the facts of the case, but is no authority for the proposition that the writ of *certiorari* will not lie unless property rights are involved. In the same case the court say: "But it is not essential that the proceedings should be strictly and technically judicial, in the sense in which that word is used when applied to courts of justice. It is sufficient if they are what is sometimes called *quasi* judicial." The court, also, in the case cited, refer to cases in this and other jurisdictions, in which the writ was issued, to review the action of school trustees, in uniting and dividing school districts, among them Miller v. Trustees of Schools, 88 Ill., 26. That case merely involved the consolidation of two school districts into one, and involved no right of private property. The court also cites Merrick v. Town Board, 41 Mich., 630, and State *ex rel.* etc., v. Moreland, 54 Wis., 150. In the former case the writ was issued to review the action of the town board in removing the relator from the office of assessor of a school district; and in the latter case to review the proceedings of the State superintendent, on appeal from the decision of the town board, in relation to the division of a school district. Counsel also rely on *In re* Wilson, 32 Minn., 145, in which the court say, in substance, that the office of the writ of *certiorari* has been extended "to review the proceedings of special tribunals, commissioners, magistrates and officers of municipal corporations, exercising judicial functions affecting the rights *or* property of the citizen, when they act in a summary way, or in a new course different from that of the common law." Counsel rely on the language, "affecting the rights or property of the citizen." The court, however, say further: "The acts of municipal corporations, or rather of municipal officers, are divided into legislative, ministerial and judicial. Of course, muncipal officers do not, strictly speaking, possess judicial powers; but they do possess certain powers, in the exercise of which they perform acts which, both from the nature of the acts themselves and their effect upon the rights or property

of the citizen, bear a close analogy to the acts of courts, and are, therefore, termed 'judicial,' or *'quasi* judicial,' to distinguish them from those that are merely ministerial or legislative."

The writ in the Minnesota case was issued to review the ordinance and proceedings of the city council of Minneapolis, to establish districts outside of which licenses to sell liquor should not be granted, and the court held that the power attempted to be exercised was purely legislative. and, therefore, the writ would not. lie. The case is no authority that property rights must be involved to warrant the issuance of the writ.

Section 12 of the Civil Service Act is as follows:

"No officer or employee in the classified civil service of any city who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before said Civil Service Commission, or by or before some officer or board appointed by said commission, to conduct such investigation. The finding and decision of such commission or investigating officer or board, when approved by said commission, shall be certified to the appointing officer, and shall be forthwith enforced by such officer. Nothing in this act shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days. In the course of an investigation of charges each member of the commission, and of any board so appointed by it, and any officer so appointed shall have the power to administer oaths and shall have power to secure by its subpœna both the attendance and testimony of witnesses, and the production of books and papers relevant to such investigation. Nothing in this section shall be construed to require such charges or investigation in cases of laborers or persons having the custody of public money, for the safe keeping of which another person has given bonds."

By this section written charges are to be made, a hearing is to take place, power is given to subpœna witnesses and ad-

minister oaths, and the decision is made final.    If such pro-
ceedings occurred in court, the investigation would be called
a trial and the decision a judgment.    Is it not at least *quasi*
judicial?

Gilbert v. Board of Police, 40 Pac. R., 264, and other
cases cited in appellee's brief are in point.    Sec. 12 refers
to the "trial board" and the court, in Joyce v. Chicago, 216
Ill., 466, calls the investigation a trial.

Counsel cite People v. Kipley, 171 Ill., 44, holding "A
public office is not property, nor are the prospective fees of
an office the property of its incumbent."    Granted, but the
court further say: "An office is a mere right to exercise a
public function or employment."    Such is the very right in-
volved in this case.    No case has held that a public officer has
no right as such.    A patrolman, legally in office, has the right
to remain in it while it exists, so long as he conducts
himself properly, and is capable of discharging, and does dis-
charge, efficiently and faithfully, the duties of the office,
and until he arrives at the age limit, if there be one, and
while he so remains he is entitled to the salary attached to
the office.    "Offices, which are a right to exercise a public or
private employment, and to take the fees and emoluments
thereunto belonging," etc.    2 Blackstone's Com., 36.

Many cases of the class to which this belongs, in which
the proceedings of the Civil Service Commission have been re-
viewed on *certiorari,* have been before this and the Supreme
Court, and that the writ would lie has never been questioned
here or in the Supreme Court.    We regard the practice of re-
view, by writ of *certiorari,* of the proceedings of the Civil
Service Commission, in such cases as the present, well estab-
lished.

Counsel for appellee urge that the finding or decision of
the commission is that the petitioner should be discharged
from the force, for violation of rule 54, and that it does not
appear in the return that there is a rule 54.    The charges
against petitioner are "conduct unbecoming an officer *and* vio-
lation of rule 54."

The specification is: "Extorting money from Scott Har-

rison, under threats of arrest, for running an opium joint, unless such payments were made to him. Time, about November, 1901. Place, 19 South Green street." The charges are two: one, conduct unbecoming an officer, the other, violation of rule 54. The finding of the trial board, which the return shows was approved by the Civil Service Commission, is as follows:. "Upon investigation of within charges, we find said Walter Bullis guilty as charged, and decide that he be dismissed from the police department and the service of the city of Chicago by the general superintendent of police."

It is true this finding includes, in its language, both charges; but even though there is no rule 54 to which it can apply, it is sufficient if it applies to the charge of conduct unbecoming an officer. No rule of the commission was necessary in order to try petitioner on the charge of conduct unbecoming an officer. Joyce v. City of Chicago, 216 Ill., 466, 473. In that case the charges were the making a false official report, *and* conduct unbecoming an officer, in respect to which the court say: "The charge filed in this case, if true, shows conduct of the plaintiff in error 'unbecoming a police officer,' and which clearly rendered him unfit to act as a lieutenant of police in the city of Chicago, and was cause for, and justified his removal from such office by the commission." In the present case, if the appellee extorted money, as specified, he was clearly guilty of "conduct unbecoming a police officer." Counsel for appellee say the specifications show that the offense charged was committed in November, 1901, twenty-three months before the charges were preferred, and contend that a delay exceeding eighteen months is unreasonable in a case like the present. It does not appear when the knowledge of appellee's offense came to the superintendent of police, and we cannot sustain the contention that appellant was guilty of laches.

It is next objected that the return does not show notice to appellee of the time and place of trial. We think this objection fatal. The only answer to it by counsel for appellant is that a copy of the charges were served upon appellee (which the return shows), and that the question of want of notice

cannot be raised here for the first time. The question is one of jurisdiction. Section 1 of rule 8 of the Civil Service Commission, which is made part of the return to the writ, provides as follows: "The commission shall cause notice in writing to be personally served on the accused, or to be mailed to him at his own address, as shown by the records of the commission, stating the time (which shall not be less than five days after the service or mailing of such notice), and place when and where such charges will be investigated, and shall give the accused an opportunity to be heard in his own defense at such investigation."

Waiving the question, not necessary to be decided, whether, in the absence of any rule in respect to notice to the person charged, he could legally be tried without notice, the Civil Service Commission is powerless to disregard a valid rule, while it remains in force. Ptacek v. The People, 94 Ill. App., 571, affirmed in 194 Ill., 125. Rule 8 was made by the commission in pursuance of section 4 of the Civil Service Act, and is as binding as if made directly by the legislature. Lindblom v. Doherty, 102 Ill. App., 14, 29, citing Mason v. Shawneetown, 77 Ill., 533, and Tudor v. Rapid Transit R. R. Co., 145 id., 129, 136. Jurisdiction must appear on the face of the return. In Highway Commissioners v. Smith, 217 Ill., 251, the court says: "The record, as it is returned in obedience to the writ, must be inspected, and the only matter to be determined is, whether the inferior tribunal had jurisdiction or not, or whether it exceeded its jurisdiction, or otherwise proceeded in violation of law. The matter cannot be tried upon the allegations, contained in the petition for the writ, or on facts not contained in the record returned," citing cases. "In the case of a subordinate tribunal of limited jurisdiction, created by statute, such as the Civil Service Commission, it is fundamental that jurisdiction must affirmatively appear on the face of the proceedings, and that no presumption will be indulged in favor of it, as in the case of a court of general jurisdiction." Lindblom v. Doherty, 102 Ill. App., 14, 24, citing numerous cases.

In Commissioners v. Harper, 38 Ill., 103, a writ of *certio-*

*rari* issued to review the proceedings of the commissioners of highways, in laying out a road. Their return to the writ stated that certain notices of the time and place of their meeting, which the statute required to be posted, were lost and could not be found. The court held this not sufficient, and say: "The substantial question presented is, was any notice given of the meeting of the commissioners to decide upon the route of the road, and to hear the reasons *pro* and *con?* The record shows no other day of meeting than the. 23rd of August, 1862. The record fails to show any time or place fixed upon for hearing reasons," and the court, in the concluding part of the opinion, say: "This notice goes to the jurisdiction of the commissioners, and we cannot assume a judisdictional fact." The return in the present case not showing that notice of the time and place when and where the charges against appellee would be investigated, was served on appellee, or mailed to his address, as required by rule 8 of the commission, we must hold that, so far as the return shows, the Civil Service Commission lacked jurisdiction to investigate the charges against appellee.

The judgment of the Superior Court will be affirmed.

*Affirmed.*