## Robert Lindblom et al., Civil Service Commission, v. Michael J. Doherty.

1. CIVIL SERVICE COMMISSION—*No Presumption to be Indulged in Favor of its Jurisdiction.*—In the case of a subordinate tribunal of limited jurisdiction created by statute, such as the civil service commission, jurisdiction must affirmatively appear on the face of its proceedings, and no presumption will be indulged in favor of it.

2. SAME—*No Jurisdiction to Investigate Charges Against Members of the Board of Local Improvements.*—The court is inclined to the opinion that the civil service commission has no jurisdiction to investigate charges against the board of local improvements as such, or against any member of such board.

3. SAME—*Power of Removal of Officers Not in the Classified Service.*—The commissioner of public works is the president of the board and the head of a department of the city government, not in the classified service, and on charges against such board or the members of the same, the civil service commission has no jurisdiction to investigate his conduct as such commissioner.

Lindblom v. Doherty.

4.  SAME—*Who May Prefer Charges Against a Subordinate Officer or Employe.*—A citizen may prefer charges against a subordinate officer or employe, in any office or department of the city government, and is not excluded from making his complaint to the appointing officer and producing his proofs before him, and such officer, if he deems there are sufficient grounds for the removal of the person complained of, may notify the civil service commission of the same.

5.  SAME—*Specifications of Alleged Causes to be Formulated.*—Specification of the alleged causes for the removal of an officer or employe under the civil service act, should be formulated with such reasonable detail and precision as will inform the people and the incumbent of what dereliction is urged against him.

6.  ORDINANCES—*Defined as the Law of the Inhabitants of the Municipality.*—When an incorporated town or city has been invested by the legislature with power to pass an ordinance for the government or welfare of the municipality, an ordinance enacted by the legislative branch of the municipality in pursuance of such power, it can not be regarded otherwise than as a law of and within the municipality.

**Proceedings Under the Civil Service Act.**—Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge presiding. Heard in this court at the October term, 1901.  Affirmed.  Opinion filed April 21, 1902.

**Statement.**—January 21, 1901, Michael J. Doherty, the appellee, filed his petition in the Circuit Court, setting forth, in substance, that prior to January 4, 1900, he was examined by the civil service commissioners of the city of Chicago for the position of superintendent of streets of said city, a position in the classified service of said city, and that on said examination he was certified by said commissioners as fit and proper in all respects to be appointed to said position, and was appointed thereto January 4, 1900, since which date he had continued to hold said position, but, since December 29, 1900, has been prevented from performing the duties thereof by the illegal acts of the civil service commissioners.  The petition then avers that said commissioners were appointed under "An act to regulate civil service in cities." approved March 20, 1895, and sets out sections 4 and 12 of the act, and avers that, in pursuance of section 4 of the act, the commissioners enacted rule 8, hereinafter referred to; that said rule has been at all times herein mentioned in full force and effect; that August 11,

1900, one Frank T. Fowler filed with said commissioners the following complaint in writing :

" To the Honorable, the Civil Service Commission of the City of Chicago.

GENTLEMEN : It has come to my notice that for about the past three years the board of local improvements have neglected the duties of their office; that the said board of local improvements and the individual members thereof, have been guilty of gross neglect of duty and of malfeasance and misfeasance in office, and of violation of their lawful duties; that during said period of time contracts for work to be done for and in behalf of the city of Chicago have been let to favorite contractors without advertising said work or receiving bids thereon, as the State law requires; that to evade the said State laws large pieces of work, which would cost in excess of the statutory limit of $500, were so divided and split that the divided or split portions of said work would be less than said sum of $500, and such portions so split or divided would be let to certain favorite contractors, and that all of said work, aggregating as aforesaid more than $500, would all be thus given out without advertisement or bid.

That said board of local improvements and the individual members thereof have issued vouchers for the payment of money for work done or supposed to have been done, in violation of law; that work was allowed to be done for and in behalf of the city of Chicago by said board of local improvements or the individual members thereof, at a cost greater than $500, without advertisement or bids therefor, and contrary to law.

That work was ordered done by said board of local improvements or the individual members thereof without written contracts therefor.

That the said board of local improvements had carried a large number of favorite employes on the city pay rolls, paid by funds received from special assessments.

That said board of local improvements or the members thereof have made contracts for public improvements and illegally received back from said contractors large portions of the work included in said contracts, which in turn has been performed by the city without advertisement or bids therefor, in violation of law.

That said board of local improvements and the members thereof have forced contractors to return to the city portions of the work included in their said contracts, and also

to deposit with the said board of local improvements a sum of money sufficient to enable the city to perform the same, for the purpose of enabling the said board of local improvements to carry large numbers of employes on its pay-rolls and the pay-rolls of the public works department.

That said board of local improvements and the individual members thereof have illegally canceled and abated assessments after the said assessments were duly levied by the said board and the assessment roll approved and entered of record by the County Court.

Therefore, I respectfully request that your honorable body afford me an opportunity to publicly present the evidence on the foregoing charges on which I shall demand that such members of the said board of local improvements as come under your jurisdiction be ousted from office.

Yours sincerely,<br>
(Signed)        FRANK T. FOWLER,<br>
Alderman 13th Ward."

That at the time of filing said complaint the board of local improvements in said city was composed of Lawrence E. McGann, commissioner of public works; John A. May, secretary of said board; Richard C. S. Burke, superintendent of sewers; John Erickson, city engineer; and petitioner; and Lawrence E. McGann was president of said board; that said board of local improvements could not and did not act otherwise than as a board, and said civil service commissioners had no jurisdiction to investigate complaints or charges against said board; that in September, 1900, said commissioners, against the protest of said board of local improvements, proceeded to investigate the said complaint, and about October 24, 1900, made, as petitioner is informed and believes, certain findings and recommendations, among which findings was a finding relating to petitioner's conduct as superintendent of streets, during the years 1897 and 1898, in and by which it ambiguously and without certainty appears that said commissioners inferred that petitioner, in 1897 and 1898, was guilty, as superintendent of streets, of letting, or permitting to be let, sidewalk contracts, some of which were over $500, without advertising and without contracts in writing. And petitioner avers that any act

done or permitted to be done by him or by said board of
local improvements in the years 1897 and 1898, was before
he had passed an examination for the position of superin-
tendent of streets, and before he was in the classified serv-
ice of said city. Petitioner further avers that among the
findings of said commissioners was the following:

" There is evidence also in the character of recent street
improvements, that the bureau of streets, one of the most
important bureaus in the city service, and which requires,
and will continue to require the most intelligent expert
supervision, is not receiving the benefit of such supervision
and lacks a head with the necessary executive ability. We
therefore hereby require Mr. Doherty's separation from the
service."

That at time of said investigation and of making said
findings, Robert Lindblom, John W. Ela and John Ludwig
were the civil service commissioners, but John Ludwig
resigned as such commissioner prior to December 28, 1900,
and Joseph T. Powell was appointed in his place; that about
November 5, 1900, said commissioners recommended to
Lawrence E. McGann, commissioner of public works, to file
written charges against your petitioner, but no such charges
were filed, and December 24, 1900, said commissioners passed
a preamble and certain resolutions, as follows (setting
them out). The preamble recites, in substance, that the
corporation counsel of the city had advised McGann, com-
missioner of public works, that he was not required by law
to file written charges for the removal of the petitioner as
superintendent of streets, as recommended by the commis-
sioners; but that it was the duty of the commissioners to
recall its said recommendation, re-adopt its original findings
of October 24, 1900, and certify to said McGann a require-
ment for petitioner's discharge, and the findings of the said
commissioners adopted October 24, 1900. Following the
preamble are the following resolutions:

" Now, therefore, be it resolved, by the civil service
commission of the city of Chicago, that written charges
having been heretofore filed with this commission against
the said M. J. Doherty as superintendent of streets and as

Lindblom v. Doherty.

a member of the board of local improvements of the city
of Chicago, charging him with neglect of duty and other
misconduct as said superintendent of streets and as a mem-
ber of the board of local improvements of the city of Chi-
cago, and said charges having been investigated by this com-
mission and a copy of the same having been served upon
said M. J. Doherty before said investigation, and said M. J.
Doherty having appeared both personally and by counsel
at said investigation and having taken part therein, and
having made no objection to the said charges or any of the
said proceedings, and having an opportunity to be heard in
his own defense upon said charges, and this commission
having, as a result of said investigation, made certain find-
ings as appears by the records of this commission dated
October 24, 1900, and having found that the said M. J.
Doherty was guilty of neglect of duty of superintendent of
streets and as a member of the board of local improvements
of the city of Chicago in the matters and particulars set
forth in said findings, and this commission having fully
considered the evidence heard on said investigation and the
said findings;

This commission does hereby recall its said recommen-
dation, dated November 5th, 1900, to L. E. McGann, com-
missioner of public works of the city of Chicago, and does
hereby rescind its resolution of November 5th, 1900, in
which it recommends that the said L. E. McGann forthwith
file written charges on the grounds for the removal of said
M. J. Doherty, with the commission; and does further
rescind its amendment of November 5th, 1900, to its find-
ings of October 24th, 1900, and re-adopts and confirms in
all things its findings of October 24th, 1900, and finds the
said M. J. Doherty, as superintendent of streets, and as a
member of the board of local improvements of the city of
Chicago, guilty of neglect of duty as superintendent of
streets and as a member of the board of local improve-
ments of the city of Chicago; and finds that the said M. J.
Doherty should be separated and discharged from the serv-
ice of the city of Chicago as superintendent of streets and
as a member of the board of local improvements of the city
of Chicago; and

Be it further resolved, by the civil service commission
of the city of Chicago, that L. E. McGann, commissioner
of public works of the city of Chicago, is hereby required
forthwith to remove, separate and discharge said M. J.
Doherty from the office or position of superintendent of

streets and member of the board of local improvements of the city of Chicago, and from all further employment by the city of Chicago; and

Be it further resolved, by the civil service commission of the city of Chicago, that a certified copy of this decision and resolution be forthwith transmitted to the said L. E. McGann, commissioner of public works of the city of Chicago, and that a certified copy of the said findings of this commission of October 24th, 1900, be forthwith transmitted to the said L. E. McGann, commissioner of public works of the city of Chicago.

We hereby certify that the above is a true and correct copy of the decision and resolution of the civil service commission of the city of Chicago, adopted at a meeting of said commission, held December 24th, 1900.

(Signed)     ROBERT LINDBLOM, President.
(Signed)     T. J. CORCORAN, Secretary."

It is further averred that December 27, 1900, McGann, commissioner of public works, notified petitioner of the requirement of the civil service commissioners, and required him to surrender to the assistant superintendent of streets all city property in his possession; that since said time he has been treated by McGann as discharged, and has been prevented from performing his duties as superintendent of streets, although no written charges have ever been made against him by McGann, his appointing officer, who appointed him superintendent of streets, on the certification of said civil service commissioners, etc. Prayer for writ of certiorari to be directed to said commissioners, which, by order of the court, issued. February 13, 1901, at the February term of the court, appellants, the civil service commissioners, entered a special appearance, for the purpose of moving to quash the writ, and so moved, assigning numerous causes. March 7, 1901, the commissioners made a return to the writ. The return is quite voluminous. It shows that May 25, 1897, Mr. McGann, commissioner of public works, made a requisition on the civil service commissioners for a superintendent of streets, and that, having been informed by letter from the secretary of the commissioners that, there being then no one eligible, he might fill the position temporarily for a time, not exceeding sixty

Lindblom v. Doherty.

days, he appointed appellee Doherty, and reported his appointment to the civil service commissioners; that subsequently, Doherty, by like temporary appointments, made from time to time, continued to be superintendent of streets down to the time when he was examined for the position and certified as competent. The record of the commissioners, set forth in the return, shows:

"That said Michael J. Doherty applied to take part in, and did take part in said examination, and passed said examination with the highest mark, and was placed at the head of the eligible register for said position."

The return further shows that January 1, 1900, Mr. McGann, commissioner, etc., made a requisition for the certification of an eligible person to fill the position of superintendent of streets, and that the commissioners, January 4, 1900, certified Michael J. Doherty. The return sets forth the complaint of Frank T. Fowler, above quoted; avers notice of the filing of the complaint to each member of the board of local improvements, including appellee, and setting August 15, 1900, as the date for the hearing of charges, and shows continuances of the investigation from time to time, until October 24, 1900, at which date the commissioners made numerous findings and recommendations, which are set forth at large in the return, among which is the following:

"Mr. Doherty, the superintendent of streets, disclosed a remarkable ignorance of the sidewalk work in his department. Although it had been conceded that a large number of sidewalk contracts had been let in 1897 and 1898 without written contracts and without advertisement (and some of them over $500), he testified that to his knowledge there were no sidewalk contracts let during that time without written contracts, or without advertising; he did, however, on cross-examination by Mr. May, say that he meant to exclude 'informal' contracts in this statement, that is, contracts under $500. He said he had left the sidewalk work to Mr. Panock, although Mr. Panock was occupying the position of chief sidewalk inspector; that he knew it was his (Doherty's) duty to see that the sidewalk contracts were properly let; that he understood that the commissioner of public works relied upon him for this; that he had not performed this duty,

and had never told Mr. Panock that this responsibility was upon him; that he signed sidewalk vouchers without seeing whether the contracts had been legally let; that he knew nothing about the letting of the sidewalk contracts; that the only thing he knew was the signing of the vouchers. Mr. Panock denied that he ever received instructions from Mr. Doherty, and stated that he had never been asked for a report of his work, and had never reported to any one. In effect, it seems that Mr. Doherty made Mr. Panock superintendent of sidewalks, although he was not appointed to, examined or certified for, such position, and was, so far as the evidence shows, incompetent to fill it. Whatever improvement there may have been in sidewalk matters the past two years would seem to be due to the improved methods of the board, for Mr. Panock appeared to be still occupying the same position with relation to Mr. Doherty, and his testimony seems to indicate that his incompetency continues. There is evidence also in the character of recent street improvements that the bureau of streets—one of the most important bureaus in the city service, and which requires, and will continue to require, the most intelligent expert supervision—is not receiving the benefit of such supervision, and lacks a head with the necessary executive ability. We therefore hereby require Mr. Doherty's separation from the service."

The following abstracts from the minutes of the meeting of the commissioners, November 5, 1900, is set forth in the return :

"It was moved and carried that the findings of October 24, 1900, by the commission, in the matter of the investigation of the board of local improvements of the city of Chicago and the conduct and action of the individual members of said board, be amended by striking out the words, ' We therefore hereby require Mr. Doherty's separation from the service.' "

" Resolved, that this commission forthwith send to L. E. McGann, commissioner of public works of the city of Chicago, a certified copy of the findings in the matter of the investigation of the board of local improvements of the city of Chicago and the conduct and action of the individual members of said board as heretofore adopted by this commission, and that this commission recommend that said L. E. McGann forthwith give the notice and take the action as to M. J. Doherty, superintendent of streets and

member of said board of local improvements, provided for in section 13 of the civil service act and in rule 8 of the rules of this commission (regarding removal), and that said L. E. McGann, commissioner of public works, forthwith file written charges or grounds for the removal of said M. J. Doherty with the commission as provided for in said rule charging said M. J. Doherty with neglect of duty as such superintendent of streets and as member of said board of local improvements at various times since May 1, 1897, also charging said Doherty with the matters stated in said findings regarding him and his acts."

Next follows in the return the proceedings of the civil service commissioners at their meeting held December 24, 1900, being the preamble and resolutions set forth in appellee's petition, as heretofore stated. The return sets forth, in substance, that Mr. McGann, commissioner, etc., having been formally and officially notified of the action of the civil service commissioners, reported to the said commissioners December 27, 1900, that M. J. Doherty had been separated from the civil service by order of the civil service commissioners of date December 24, 1900.

Affidavits of Robert Lindblom, appellant, and Robert Fisher, an attorney, were filed in support of the motion to quash the writ of certiorari, which state, in substance, that appellee was present at the investigation of the charges in the Fowler complaint, testified, and did not, in any way, object to the jurisdiction of the commissioners. Also, there was introduced in evidence, in support of such motion, a bill of complaint filed in the Circuit Court of Cook County, by appellee, when, does not appear, but which was sworn to October 25, 1900, against appellants, Lindblom and Ela, John W. Ludwig, Carter H. Harrison, mayor, and Lawrence E. McGann, setting up the Fowler charges, etc., and praying an injunction restraining the defendants from separating the complainant from the board of local improvements, and from discharging him as superintendent of streets. Appellants also offered in evidence, in support of said motion, the following sections of an ordinance of the city of Chicago:

" 1646.    Duties.—The superintendent of streets shall per-

form such duties as may be required of him by the commissioner of public works or the ordinances of the city.

1647. Charge of Streets.—He shall have charge of improvement and repair of all streets, avenues, alleys and highways in the city of Chicago, and the construction and repair of all sidewalks."

No other evidence was introduced. The court overruled the motion to quash the writ, heard the cause on the petition and return, and found and adjudged as follows:

" That the said civil service commission in the said proceedings and in the findings, judgment and recommendations of the said civil service commission in said matter in the petition herein mentioned and referred to, proceeded irregularly, illegally and without jurisdiction, to the wrong and injury of the said petitioner; and the court doth consider and adjudge that the said proceedings, findings, judgment, resolutions, charges and records should be and the same were thereby set aside, quashed, and held for naught."

CHARLES M. WALKER, corporation counsel, COLIN C. H. FYFFE and ROSWELL B. MASON, assistant corporation counsel, attorneys for appellants.

T. A. MORAN, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

It is not claimed by appellee that he was not notified to appear before the civil service commission to answer the charges preferred by Frank T. Fowler, or that he did not appear in accordance with such notice, or that he objected to the jurisdiction of the commission; but he claims that the proceedings were not such as to give the commission jurisdiction to investigate his official conduct as superintendent of streets. In the case of a subordinate tribunal of limited jurisdiction, created by statute, such as the civil service commission, it is fundamental that jurisdiction must affirmatively appear on the face of the proceedings, and that no presumption will be indulged in favor of it, as in the case of a court of general jurisdiction. Jurisdiction must appear by the return to the writ. Doolittle v. Galena & C. U. R. R. Co., 14 Ill. 381; C. & R. I. R. R. Co. v. Whip-

ple, 22 Ib. 105; Same v. Fell, 1b. 333; Commissioners of Highways v. Supervisors, etc., 27 Ib. 140; Commissioners v. Harper, 38 Ib. 103; Rue v. City of Chicago, 66 Ib. 256; Miller v. Trustees, 88 Ib. 26; Gerdes v. Champion, 108 Ib. 137; Lees v. Drainage Commissioners, 125 Ib. 47; Whittaker v. Village of Venice, 150 Ib. 195.

The charges made by Frank T. Fowler, which constituted the basis of the investigation of the civil service commission, are against the board of local improvements and the individual members thereof. They are directed against the board as a board, and against the individual members thereof as members of the board. The words, " and the individual members thereof," can only mean that each member of the board is charged as participating in the acts of the board complained of. On the hypothesis that the civil service commission has jurisdiction to investigate charges presented as the charges in question were, against the board of local improvements, which is not by any means clear, it may perhaps have had jurisdiction to investigate the charges in question against the board as a board, and as against each member of the board as participating therein. The complaint, however, contains no charge against Lawrence E. McGann, commissioner of public works, as such, nor against John A. May, secretary of the board, as such, nor against Richard O. S. Burke, superintendent of sewers, as such, nor against John Erickson, city engineer, as such, nor against Michael J. Doherty, superintendent of streets, as such; and we can not perceive how charges not made could be legally investigated by the commission—how the conduct of the appellee, Michael J. Doherty, in his official capacity as superintendent of streets, could legally be investigated on charges that he participated, as a member of the board of local improvements, in alleged wrongful acts or omissions of the board. Such charges were certainly no notice to appellee that his conduct as superintendent of streets was to be investigated. In preparing his defense to the charges made, he would naturally consider only his acts as a member of the board of local improvements, and not

at all his official acts as superintendent of streets. The board of local improvements was organized under "An act concerning local improvements," approved June 14, 1897, and in force when the charges in question were made and the investigation had. Hurd's Rev. Stat. 1897, p. 355; Sess. Laws 1897, p. 101.

Section 2 of the act is as follows:

" In cities of this State having a population of twenty-five thousand or more, by the last preceding census of the United States or of this State, there shall be appointed and designated, in the manner provided by law, or if no such method be provided, then by appointment of the mayor, a commissioner of public works, a superintendent of streets, a superintendent of special assessments, a superintendent of sewers and a city engineer. . * * * Such offices shall not be discontinued at any time by ordinance or otherwise, but vacancies therein shall be filled in the same manner as the original appointment. The appointees to said office shall be subject to removal by the mayor, but the term of office shall be held to expire as soon after the end of the term of the mayor appointing, as their successors shall be appointed and qualified."

The powers granted by the act and the duties imposed are granted to and imposed on the board as a whole, and no specific duties are imposed on any individual member of the board, except that, in certain sections of the act, specific personal duties are imposed on the president of the board, and by section 85 of the act it is provided, in the case of work done by a contractor:

" The president of the said board of local improvements shall either examine the said work himself, or designate some member of the board to do so, who shall make a personal examination and certify in writing as to the result thereof," etc.

The complaint in question contains no specific charge that the president, or any member of the board, failed in the performance of any personal duty imposed on him by the act, or by virtue of it.

We are inclined to the view that the civil service commission has no jurisdiction to investigate charges against

Lindblom v. Doherty.

the board of local improvements, as such, or against any member of the board, as such member; although we do not deem it necessary to the decision of the cause to pass on this question. The commissioner of public works, who is the president of the board and the head of a department of the city government, is not in the classified service, and therefore it is clear that on charges against the board and the members thereof, the commission has no jurisdiction to investigate his conduct as commissioner of public works. All the other members of the board are in the classified civil service, and any one of them is subject to investigation in his official capacity, on charges legally preferred. Sections 4 and 12 of the civil service act are as follows:

Section 4. " Said commission shall make rules to carry out the purposes of this act, and for examinations, appointments and removals in accordance with its provisions, and the commission may, from time to time, make changes in the original rules."

Section 12. " No officer or employe in the classified civil service of any city, who shall have been appointed under said rules, and after said examination, shall, be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before the civil service commission, or by or before some officer or board appointed by said commission to conduct such investigation. The finding and decision of such commission or investigating officer or board, when approved 'by said commission, shall be certified to the appointing officer and shall be forthwith enforced by such officer. Nothing in this act shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days. In the course of an investigation of charges, each member of the commission and of any board so appointed by it, or any officer so appointed, shall have the power to administer oaths and shall have power to secure by its subpœna both the attendance and testimony of witnesses, and the production of books and papers relevant to such investigation. Nothing in this section shall be construed to require such charges or investigation in cases of laborers or persons having the custody of public money, for the safekeeping of which another person has given bonds."

Among the rules made by the commission is rule 8, which is as follows:

"When a removal is deemed necessary, the appointing officer shall immediately notify the commission, in writing, of the grounds therefor. Such grounds shall be investigated by the commission, and the accused person shall be given an opportunity to be heard in his own defense, provided, however, that such officer or employe file a written statement requesting an investigation within fifteen (15) days after the date of his separation. The finding and decision of the commission shall be certified to the appointing officer, and shall be forthwith enforced by said officer. Pending such investigation, the appointing officer may suspend the accused for a reasonable period, not exceeding thirty days. Nothing in this section will be construed to require such charges or investigation in cases of laborers or persons having the custody of public money, for the safe keeping of which another person has given bonds."

The power of removal is in the appointing officer, who, in the present case, was the commissioner of public works, subject to the charges made against the officer or employe being found true, on investigation by the civil service commission. The commission can not remove. Its function is limited to the investigation of the preferred charges, and certifying the result to the appointing officer. By section 12 it is made the duty of the appointing officer to remove, in case the charges shall be found by the commission to be true and sufficient to warrant discharge. It is the appointing officer who, by section 12, may suspend a subordinate for thirty days. By section 10 appointments are to be made on probation, for a period to be fixed by the rule of the commission, and the section provides that "at or before the expiration of the period of probation, the head of the department, or office in which a candidate is employed, may, by and with the consent of the commission, discharge him, upon assigning his reason therefor to said commission." Section 12 does not take from the appointing officer the power of removal of a subordinate. It merely restricts the exercise of the power, by imposing conditions precedent to its exercise. The section provides:

"No officer or employe in the classified civil service of any city, who shall have been appointed under said rules, shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense."

By rule 8 of the board it is provided :

"When a removal is deemed necessary, the appointing officer shall immediately notify the commission, in writing, of the grounds therefor."

It is the appointing officer who, subject to the conditions of section 12, has the power of removal; it is that officer who, if he believes he has good reasons for removal, would desire to exercise the power, and the requirement of rule 8 that the appointing officer shall notify the commission of the grounds for removal, is, in our opinion, in harmony with the spirit of the act, and warranted by it.

If any citizen has cause to complain of a subordinate officer or employe, in any office or department of the city government, the rule does not exclude him from making his complaint to the appointing officer, and producing his proofs before him, when such officer, if he deems there are sufficient grounds for the removal of the person complained of, may notify the commission of the same. That the commission is bound by its rules, made in pursuance of section 4 of the act, is beyond controversy. Its rules made in pursuance of the act, and authorized by it, are as binding on the commission as if made directly by the legislature. Mason v. Shawneetown, 77 Ill. 533; Tudor v. Rapid Trans. R. R. Co., 154 Ib. 129, 136.

In Mason v. Shawneetown the court say :

"When an incorporated town or city has been invested with power to pass an ordinance, by the legislature, for the government or welfare of the municipality, an ordinance enacted by the legislative branch of the corporation, in pursuance of the act creating the corporation, has the same force and effect of a law passed by the legislature, and can not be regarded otherwise than a law of, and within, the incorporation. An ordinance is the law of the inhabitants of the municipality."

We perceive no reason why the language quoted is not,

in principle, applicable to rules authorized by the legislature. Rules of court, within the power of the court to make, have the binding force of a statute. Axtell v. Pulsifer, 155 Ill. 141, 151.

In order to warrant an investigation of appellee's conduct as superintendent of streets, it was necessary, in view of the provisions of the civil service act and rule 8 of the commission, that " written charges " should have been preferred against him, as such superintendent, by his appointing officer, the commissioner of public works, specifying grounds for his removal, in such manner as to apprise him of what he was called on to defend against. In Andrews v. King, 77 Me. 224, cited by appellants' counsel, in which case the statute was that the officer should " hold office during good behavior, subject, however, after hearing, to removal at any time by the mayor, by and with the advice and consent of the aldermen, for inefficiency or other cause," the court say (p. 234):

" Specifications of the alleged causes should, therefore, be formulated with such reasonable detail and precision as shall inform the people and the incumbent of what dereliction is urged against him. The charges should be specifically stated with substantial certainty, though the technical nicety required in indictments is not necessary." See also Throop on Public Officers, Sec. 333.

In the present case no charges were preferred against appellee in his official capacity of superintendent of streets, by the commissioner of public works, his appointing officer, or by Frank T. Fowler, or any one, and therefore he had not the opportunity to be heard in his defense, on " written charges," which the statute guarantees him.

The commission was correct in the view which it took at its meeting of November 5, 1900, namely, that to warrant an investigation of appellee's acts as superintendent of public streets, it was necessary that his appointing officer, the commissioner of public works, should prefer written charges against him. This view is in accordance with a written opinion of former corporation counsel William G. Beale, Esq., given to the commission December 27, 1895,

which, as we think, states the law.   We concur in the view of appellee's counsel that so much of rule 8 of the commission as makes the filing of a written statement by an accused person, requesting an investigation, a condition precedent to the investigation, is not warranted by the civil service law.

Other questions are mooted by counsel, and numerous cases are cited, to which we do not deem it necessary to refer.

We are clearly of the opinion that the return to the writ not only fails to show jurisdiction of the civil service commission to investigate appellee's official acts as superintendent of streets, but that it shows conclusively that the commission had no such jurisdiction.   Therefore the judgment will be affirmed.