Agnes Kilroy, Appellee, v. The Retirement Board of the Park Policemen's Annuity and Benefit Fund et al., Respondents.

Appeal of The Retirement Board of the Park Policemen's Annuity and Benefit Fund, Appellant.

Gen. No. 39,859.

Heard in the second division of this court for the first district at the December term, 1937. Opinion filed November 17, 1938. Rehearing denied December 7, 1938.

RAYMOND A. CAVANAGH, of Chicago, for appellant.

RALPH O. WINKENWERDER and FINN & MILLER, both of Chicago, for appellee.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This appeal seeks to reverse a judgment entered in a common law certiorari proceeding which quashed the return of the respondent, Retirement Board of the Park Policemen's Annuity and Benefit Fund, and ordered that it "pay to the Petitioner, Agnes Kilroy, the annuity provided for the widow of a policeman whose death shall result from injury incurred in the performance of an act or acts of duty in accordance with the provisions of the legislative enactment creating the Park Policemen's Annuity and Benefit Fund, being section 31 of said enactment, said payments to date from the day following the date of the death of the husband of said Petitioner."

Respondent contends that "Officer Kilroy did not die as the result of injuries incurred in the performance of an act of duty, and that there was no causal connection between the alleged injuries and the death of Officer Kilroy"; and that "the *nisi prius* court had no power to weigh the evidence and substitute the judgment of the court for the judgment of the defendant board."

The theory of petitioner (hereinafter referred to as plaintiff) is that "she is entitled to compensation annuity as the widow of Fred J. Kilroy, a deceased member of the police force of the Lincoln Park Commissioners of the City of Chicago, who is alleged by the plaintiff to have died as the result of injuries incurred in the performance of an act of duty."

Fred J. Kilroy was a park policeman in the city of Chicago, employed by the Lincoln Park commissioners. He entered the police service February 16, 1922, and

died March 17, 1930. He was the husband of Agnes Kilroy, plaintiff, and the father of four children, namely, Dorothy, James, June and Shirley Kilroy. Following the death of officer Kilroy, the respondent board granted his widow, Agnes Kilroy, an annuity of $15.17 a month for life or until remarriage, together with an additional allowance of $10 a month for each minor child until such child attained the age of 18 years. Payment of such allowances began as of the day following Kilroy's death.

In February, 1931, plaintiff presented to the board a petition requesting that she be paid "compensation annuity" as provided in section 31 of the act governing the park policemen's annuity and benefit fund (Ill. State Bar Stats. 1935, ch. 105, par. 459 [Jones Ill. Stats. Ann. 100.584]) alleging that her husband's death resulted from injuries incurred in the performance of an act of duty. Following an investigation by its attorney her application for such increased annuity "was laid on the table" at a meeting held April 8, 1931, the board finding that "the death of officer Fred J. Kilroy was not the result of an injury sustained by him on January 31, 1930, at Montrose avenue and Sheridan road, while in the performance of an act of duty." In June, 1931, plaintiff requested that her application be set down for hearing. Thereafter, a partial hearing was had at a meeting of the respondent board on October 6, 1931, but a motion made at that time that "Mrs. Kilroy's application for increase in her annuity be taken from the table" failed to carry. Subsequently, plaintiff's attorney appeared before the board on November 7, 1933, and outlined his version of the facts upon which she predicated her claim, but no action was taken by the board. On or about April 12, 1935, plaintiff filed a proceeding in mandamus against respondent seeking to compel payment to her of the increased

compensation annuity provided for in section 31 of the act, heretofore referred to. Thereafter hearings were had and testimony taken before the board in connection with plaintiff's claim on May 6, June 10, August 5 and September 9, 1936. A synopsis of the testimony and affidavits, as well as of various reports theretofore made to the board by its attorney, was submitted to respondent on October 7, 1936. At a meeting of the board held November 4, 1936, plaintiff's application for increased compensation annuity was denied. May 17, 1937, an order was entered in the circuit court of Cook county allowing plaintiff's petition for mandamus to stand as a petition for certiorari, with leave to respondent to file its return instanter. Respondent's return, which included all the evidence presented in the matter of plaintiff's application, was filed the same day.

It appears from said return that on January 31, 1930, at 4:45 p. m., Fred J. Kilroy was struck by an automobile and knocked down while attempting to assist a lady across a driveway in Lincoln Park; that he continued to perform his duties thereafter that evening, returning to his home at about 8 p. m.; and that Dr. William J. Schaffer was called to Kilroy's home that same night to treat him.

The only question before the respondent board was whether or not Kilroy's death occurred as a result of the injuries incurred by him in the performance of an act of duty on January 31, 1930.

Plaintiff and three of her children testified before the respondent board and a number of her friends and friends of Kilroy submitted affidavits to said board to the effect that prior to his injury Kilroy was an affable, affectionate husband and father, with a pleasant disposition, and that after said injury there was a marked change in his personality in that he became sensitive,

explosive and irritable. Evidence was also submitted to the board, either in the form of affidavits or the testimony of witnesses, that Kilroy, commencing about seven or eight days after his injury, suffered from severe and protracted head pains, as well as from hallucinations, especially as to his physical condition and the improbability of his recovering from his injuries.

Dr. Harold S. Hulbert, a specialist in mental and nervous diseases, called by plaintiff as an expert witness before the board, testified in answer to a hypothetical question which included the assumption that the hypothetical person "after a period of about seven or eight days [subsequent to his injury] began to show signs or symptoms of organic brain disease," that it was his opinion that either "the memory defect, sensitivity to noises, the change in personality, profound change in mood, show that the brain tissue itself was involved . . . the combination of the pains plus this impaired brain condition, keeping him from thinking, was the cause of his deciding to die by suicide . . . the injuries were, within reasonable medical certainty, the proximate cause of his death . . . the personality change, the depressed mood, the emotional instability, and the head pains following the accident were unbearable, and he died because of the combination of these things."

As heretofore stated, when plaintiff's application for the increased annuity was first presented to the board the matter was referred to respondent's attorney for an investigation of her claim and a report thereon. The first reports of the attorney furnished the basis for the original refusal of the board to act favorably on plaintiff's application. These and subsequent reports of said attorney, although not sworn to, were incorporated in the proceedings of the board which were included in its return to the writ of cer-

tiorari. Plaintiff strenuously objects to these reports being afforded any consideration in our determination of the question as to whether there was any evidence in the record of the proceedings of the board that fairly tended to show that the board was legally justified in denying plaintiff's application for the compensation annuity. It is true that all the matters and statements contained in said reports were merely "hearsay" to the board's attorney, that none of the statements contained therein was sworn to, that they contained some statements of a nature calculated to prejudice the board in its disposition of plaintiff's application and that neither said reports nor any portion thereof would be admissible in the trial of a cause in a court of law. It might be said in this connection that "the niceties and refinements of the procedure or the forms of questions to and the answers of witnesses are not as strictly applied as on a hearing before a judicial body, but the substance of the law must be at all times regarded, as well as the competency and materiality of the evidence." *Schireson v. Walsh,* 354 Ill. 40. Because of the incompetency as evidence of the major portion of their contents, no consideration should or will be given the aforesaid reports in our determination of the question as to whether there was any evidence before the board which fairly tended to disprove plaintiff's claim that there was a causal connection between the injuries received by her husband and his suicide.

It was only upon satisfactory proof being made to the board that plaintiff's husband received injuries in the performance of his duty from which his death resulted that the respondent was bound to order payment of the increased annuity. The burden was therefore upon plaintiff to present satisfactory proof to

the board that Kilroy took his own life as a result of the injuries he received while on duty. Neither mere speculation nor conjecture was sufficient. Even though we assume that plaintiff made out a prima facie case before the board for the allowance of her claim, the board still had the right to consider the testimony of Dr. William J. Schaffer, Kilroy's attending physician, and Dr. Francis Gerty on the question of whether or not there was a causal relation between Kilroy's injuries and his death by suicide.

Dr. Schaffer, after examining a report made in his own handwriting and signed by him on February 25, 1930, testified, reading from said report: "The first visit was January 31, 1930. Contusion of right side of head, left side of chest, sprain and contusion of left knee." He testified further that when he saw Kilroy at his home on the night of January 31, 1930, "he had a contusion on the right side of the head . . . and a bruise on the cheek . . . he complained of pain . . . discoloration of his chest . . . complained of severe pain in his left knee . . . could not stand on it . . . I examined it and found it quite swollen and inflamed . . . I disinfected the bruise in his head . . . I do not believe I applied a dressing . . . I told him to keep off his knee and keep an ice bag on his knee until the next day . . . then I substituted hot applications and rest for the knee"; that "I saw him the next day, and every other day for about two or three weeks . . . I think it was about ten or twelve times"; that he did not think at the time that the injury to the head was serious at all; that Kilroy suffered quite a sprain to his knee; that he treated him about six weeks, all told, and "it came along nicely . . . as well as you could expect under the conditions"; that the last time he saw Kilroy was about the middle of March and on that occasion "I told him I thought he had recovered completely and

could return to work"; that the head bruise cleared in about a week or 10 days; that "he complained severely about his knee . . . much more than I thought was necessary . . . that he seemed to worry about the outcome of it . . . it was hard to get the idea out of his head that the knee was not going to be a bad knee . . . he said he was never going to walk on it again . . . it was never going to be right . . . I told him his complaint was out of all proportion to his injury . . . but that was the way he felt"; that when he [the witness] told Kilroy that he had completely recovered "he hesitated . . . he did not know whether to go back to work or not"; that "I said that if it causes trouble we would have to take you off the job again"; and that in his opinion when he last saw Kilroy on March 14, 1930, he had fully recovered and was capable of resuming his work. Dr. Schaffer also testified as to some circumstances that would tend to show that the relations between Kilroy and his wife and the other members of the family were somewhat strained.

Dr. Francis J. Gerty, a specialist in mental and nervous diseases, who is superintendent of the Cook County Psychopathic Hospital, in answer to a hypothetical question propounded to him by the board's attorney, testified that in his opinion there was no causal connection between the injuries received by the hypothetical person on January 31, 1930, and his death on March 17; that there was nothing to indicate that such person was suffering from an organic brain disease; and that his suicide could have been due to worry over what he thought was his wife's lack of sympathy or his wife's neglect.

The respondent board was the judge of the weight and sufficiency of the evidence and the credibility of the witnesses. Its finding was unquestionably based on the failure of plaintiff to produce what it considered

satisfactory evidence as to the alleged causal connection between Kilroy's injuries and his death by suicide, as well as upon the testimony of Dr. Schaffer, the attending physician, and of Dr. Gerty. Where the inferior tribunal is not arbitrary in its finding and there is evidence in the record of its proceedings which fairly tends to support said finding, the reviewing court is not justified in substituting its judgment for the discretion and judgment of such inferior tribunal.

Under the settled law of this State, where it is sought by the common law writ of certiorari to review a decision or an order of an inferior tribunal, such as the respondent board, the record of such board must show that it acted upon evidence and contain the testimony upon which the decision was based in order that the court may determine whether there was any evidence fairly tending to sustain the order. (*Funkhouser v. Coffin,* 301 Ill. 257; *Tazewell Coal Co. v. Industrial Commission,* 287 Ill. 465; *Glos v. Woodard,* 202 Ill. 480.) As long as ·the board had jurisdiction to hear and determine the issue presented by plaintiff's petition and application, which it clearly had, and followed the form of proceedings legally applicable, which it did, the trial court was without power to disturb the order of the respondent board, where there was, as here, evidence which fairly tended to sustain such order, merely because in the opinion of the court the board erred in its finding and order. (*Campbell v. Civil Service Commission,* 290 Ill. App. 105; *People ex rel. Maloney v. Lindblom,* 182 Ill. 241.)

In *Hopkins v. Ames,* 344 Ill. 527, in which a writ of certiorari was directed to members of the civil service commission of the city of Chicago, commanding them "to certify and bring up a complete report of the proceedings of said commission," which resulted in the discharge of the petitioner therein from his position as patrolman in the department of police of the city, in passing upon the power of a reviewing court in a

common law certiorari proceeding, the court said at pp. 531 and 532: " 'The court has no power to pass upon the findings and conclusions of the inferior tribunal but it may examine the proceeding to determine whether the inferior tribunal had jurisdiction, and the facts upon which the jurisdiction is founded must appear in the record, which also must show that the inferior tribunal acted upon evidence. If the inferior tribunal had jurisdiction to hear and determine the case and it proceeded legally, the court is powerless to review the order on the ground that the inferior tribunal wrongfully removed the defendant from office. *People v. City of Chicago,* 234 Ill. 416; *Joyce v. City of Chicago,* 216 id. 466; *City of Chicago v. People,* 210 id. 84; *People v. Lindblom,* 182 id. 241; *Wilcox v. People,* 90 id. 186.'

"In the present case the return of the civil service commission shows that specific charges were filed against Hopkins; that he was served with notice; that he appeared in person and by counsel; that evidence was heard on the charges and that he was found guilty thereon. The record shows that the civil service commission had jurisdiction of the parties and of the subject matter, that it acted upon evidence, and that it did not exceed its jurisdiction. The circuit court, therefore, had no jurisdiction to review the findings of the civil service commission and determine whether or not its findings were erroneous. (*People v. Lindblom, supra.*) After a trial is had before the civil service commission in the manner pointed out by the statute and evidence is taken tending to show the guilt of the person charged, the action of the civil service commission is final and not reviewable by the courts. (*People v. City of Chicago, supra; City of Chicago v. People, supra.*) To allow a review of the evidence of the courts on investigations conducted by the civil service commission or under its direction would be the exercise of executive powers, which the separation of depart-

ments of the government precludes the courts from exercising. (*People v. City of Chicago, supra; City of Aurora v. Schoeberlein,* 230 Ill. 496.) '' What was said in the *Ames* case is equally applicable to the instant case.

In the present case plaintiff filed her application with the retirement board for an increase in her annuity payments. She appeared in person and by counsel and evidence was heard upon her petition and application. The report of its proceedings shows that the respondent board had jurisdiction of the parties and of the subject matter, that it acted upon evidence and that it did not exceed its jurisdiction. The circuit court, therefore, was without jurisdiction to review the finding and order of the respondent board and it was in' error in holding that there was no evidence fairly tending to support the order of the board denying plaintiff's application.

For the reasons indicated herein the judgment of the circuit court is reversed and the cause remanded with directions to quash the writ of certiorari issued by the circuit court.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and BURKE, J., concur.