John T. Cartan, Walter F. Healy, Louis Klatzco, Thomas Connelly, William J. Drury, Thomas Harrison and Eugene A. Barry, Appellees, v. Walter L. Gregory, James B. Cashin and William F. Clarke, Civil Service Commissioners of City of Chicago, Appellants.

Gen. Nos. 43,324, 43,388, 43,402, 43,403, 43,411–43,414.

308

Opinion filed June 26, 1946. Rehearing denied September 6, 1946. Released for publication September 9, 1946.

BARNET HODES, Corporation Counsel, for appellants; J. HERZL SEGAL, Head of Appeals and Review Division, FRED V. MAGUIRE, CARL H. LUNDQUIST and LOUIS KARTON, Assistant Corporation Counsel, of counsel.

MICHAEL F. RYAN, of Chicago, for appellees, Cartan, Healy and Klatzco.

MICHAEL F. RYAN and MARTIN S. GERBER, both of Chicago, for appellee, Klatzco.

CUSACK & CUSACK, of Chicago, for appellee, Connelly.

STEPHEN LOVE, of Chicago, for appellee, Drury.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee, Harrison.

HOWARD ELLIS, WALTER E. TINSLEY and JOHN M. O'CONNOR, JR., all of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

John T. Cartan, Walter F. Healy, Louis Klatzco, Thomas Connelly, William J. Drury, Thomas Harrison and Eugene A. Barry filed separate complaints in the superior court of Cook county, praying that a writ of certiorari be directed to Walter L. Gregory, James B. Cashin and William F. Clarke, civil service commissioners of the City of Chicago, commanding them to certify and file a true and complete record of the proceedings of the Commission in the matter of the removal on June 16, 1944 of William J. Drury, as lieutenant, and of the other plaintiffs as captains of police in the classified service of the department of police of the City of Chicago. The court overruled defendants' motions to strike and dismiss the complaints, and directed that writs of certiorari issue, commanding defendants to certify and file a full, true and complete copy of the official record made, kept and preserved by them as such commissioners, up to and including June 16, 1944, in the matter of the removal of each plaintiff. Defendants filed a return and a supplemental return. The court sustained the motion of each plaintiff to quash the return and supplemental return, denied defendants' motions to quash the writs in each case; and the record of the Civil Service Commission was quashed. After judgment was entered in the certiorari case, Lieutenant Drury filed a complaint for mandamus

to compel the defendants to permit him to take a promotional examination for captain. Defendants denied that he was eligible to take a promotional examination because he had previously been discharged from the police force after a trial before the Commission and was not an employee of the police department. The court directed a writ of mandamus to issue, commanding the defendants to permit Drury to take a promotional examination for the position of captain of police. From the judgments in these cases, separate appeals were taken.

A consolidated brief was filed on behalf of the appellants in six cases for writs of certiorari and in the mandamus case. Captains Harrison, Cartan, Healy, Klatzco and Connelly, appellees, also filed a consolidated brief. Lieutenant Drury, by order of court, entered on stipulation, did not file a brief in the certiorari case, but adopted the brief of Captain Harrison. He, (Lieutenant Drury) filed a brief in the mandamus case. In the Captain Barry case the parties stipulated that the court file an opinion and enter judgment in conformity with the opinions and judgments in the other cases.

Each plaintiff commanded a police district. Each was suspended as an employee in the classified service, restored to duty for one day, again suspended and again restored to duty by virtue of a writ of mandamus issued out of the superior court. Charges were filed against Healy on December 2, 1943; against Drury on December 17, 1943; against Cartan on December 22, 1943; against Connelly on December 28, 1943; against Klatzco on December 29, 1943; against Harrison on December 23, 1943; and against Barry on December 22, 1943. They were charged with "conduct unbecoming a police officer or employee of the Police Department" and "neglect of duty." Accompanying the charges and as a part thereof, were "specifications" and a "schedule of particulars." The charges

and specifications were duly served on plaintiffs and they were given due notice of the time and place of the hearings. Plaintiffs were present and represented by counsel at the hearings and all adjournments thereof. Defendants, in the return, incorporated the findings and decision of the Civil Service Commission dated June 16, 1944. Therein defendants found each plaintiff guilty of the charges and specifications, and ordered him discharged from his position.

In the case of Harrison, Drury and Klatzco contempt proceedings were instituted against defendants by the filing of a petition for a rule to show cause based on the allegation that the finding and decision in the return bore the date of June 16, 1944, but that said finding and decision was not on file and on record and in existence on that date, and on the further ground that the defendants failed to include in the return various motions made, letters written and orders entered during a hearing before the Commission. Afterwards a rule to show cause was entered and the defendants answered. A hearing was had in the Harrison case and defendants were found guilty of contempt of court for failure to comply with the writ of certiorari, in that the return contained a finding and decision which was not of record, in existence and on file with the Civil Service Commission until June 22, 1944, and for failure to file a full and complete return. Commissioners Gregory and Clarke were fined $2,500 each and ordered committed to jail for 30 days, there to remain until each paid his fine and "unless he shall sooner purge himself of said contempt by complying with the writ of certiorari, or until released by due process of law." Subsequently, a hearing was had on the rule to show cause in the Drury case. During the course of that hearing the commissioners purged themselves by filing a full, true and complete record as commanded by the writs. They did not appeal from the contempt order. Consequently, they cannot urge the contempt judgment

as ground for appeal in the certiorari proceedings. In the court below the trial was based solely on the record returned by the commissioners.

██ Since the Civil Service Act contains no provisions for a judicial review of the actions of the Commission, the common law writ of certiorari is the only mode of review. This writ brought before the superior court the record of the proceedings of the Commission. The trial is on this record alone. The record must show affirmatively all the necessary facts upon which the jurisdiction of the Commission is founded. ''There is no presumption of jurisdiction in favor of a body exercising a limited or statutory jurisdiction. Nothing is taken by intendment in favor of such jurisdiction but the facts upon which the jurisdiction is founded must appear in the record.'' *Funkhouser v. Coffin,* 301 Ill. 257. Section 12 of the Civil Service Act, (par. 51, ch. 24½, Ill. Rev. Stat. 1945 [Jones Ill. Stats Ann. 23.052]), which gives removal powers to the Commission, reads:

██ ''Excepting as hereinafter provided in this section, no officer or employee in the classified civil service of any city who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before said civil service commission, or by or before some officer or board appointed by said commission, to conduct such investigation. . . . The finding and decision of such commission or investigating officer or board, when approved by said commission, shall be certified to the appointing officer, and shall forthwith be enforced by such officer.''

This section sets forth the only authority for removal and enumerates the steps to be taken. Under Section 12 the jurisdictional prerequisites to the exercise of

the power of removal are: (1) cause, (2) written
charges, (3) an opportunity to be heard in his own
defense, (4) a finding and decision approved by the
Commission and certified to the appointing officer for
enforcement forthwith, and (5) observance of the form
of proceedings legally applicable in such cases. Plain-
tiffs maintain that the return does not sustain the find-
ing and decision of June 16, 1944, directing the removal
of plaintiffs, in that it does not show the necessary
jurisdictional facts. Plaintiffs admit, because each
return contains proof of service that the charges were
served, but insist that no other necessary jurisdictional
facts affirmatively appear. Sec. VI of the Civil Serv-
ice Rules adopted by the Commission under the au-
thority of sec. 4 of the Civil Service Act, provides:

"The finding and decision of the Commission, or any
officer or board appointed by it, following an investi-
gation of charges, shall be preserved by the Secretary,
and notice of said finding and decision sent to the de-
partment head or employing officer for enforcement.
If the finding or decision is that an officer or employe
is guilty of charges investigated, and removal or dis-
charge is ordered, such order of removal or discharge
shall become effective forthwith."

This rule has the same effect as the statute itself and
is binding on the Commission. *Lindblom v. Doherty,*
102 Ill. App. 14.

On June 16, 1944 the following finding and decision
was on file in the records of the Commission:

"The Civil Service Commission has completed the
investigation of the charges involving nine Command-
ing Officers of the Police Department as filed by the
Commissioner of Police. The unanimous decision of
the investigation in each case is: [name of each plain-
tiff] Guilty as charged—discharged from the service.
[names of two captains] Guilty as charged—evidence
not sufficient to warrant discharge. A written decision,

including the findings of the Commission, is now on file in the case of Walter F. Healy and written decisions in all of the other cases where discharge is ordered will be filed in due course.''

Defendants omitted this finding and decision from their original return. They argue that this finding and decision is an ''announcement'' or a ''press release.'' We find that there is nothing in the return to substantiate such a designation. Another document on file on June 16, 1944 was the following, signed by the secretary of the Commission and addressed to the commissioner of police:

''The Commission this date found the following members of the Police Department guilty of the charges indicated, and ordered that they be discharged from the service of the City of Chicago: [Here are listed the names of plaintiffs.] Sec. 3—Conduct unbecoming a police officer or an employe of the Police Department; Sec. 5—Neglect of Duty. The Commission on this date found the following members of the Police Department guilty of the charges as indicated in the foregoing cases, but found the evidence insufficient to warrant their discharge from the service of the City of Chicago: [Here are listed the names of two captains.] These cases were heretofore taken under advisement.''

The secretary of the Commission, who had charge of the records, testified that the quoted finding was the only written finding on file on June 16, 1944, and that the two documents quoted were the only ones on file on that date. It is apparent that they contain no facts showing upon what the order of discharge was based.

 The official minutes of the meeting of the Commission on June 16, 1944 are as follows:

''The Civil Service Commission met in regular session, 208 City Hall, at 2 p. m. Present, Commissioners Gregory, Clarke and Cashin. Minutes of

June 15 read and approved. Findings and decisions approved. Findings rendered by the Commission upon investigation of charges filed by the Comr. of Police in the following cases heretofore taken under advisement: [Here are listed the names of plaintiffs.] Ordered discharged from the service of the City of Chicago (Rule 389:—Section 3—Conduct unbecoming a police officer or an employe of the Police Department; Section 5—Neglect of duty); [Here are listed the names of two captains.] Found guilty as charged, but evidence insufficient to warrant discharge from the service of the City of Chicago.''

The minutes of the Commission of June 16, 1944, the finding and decision of June 16, 1944 and the certification thereof on the same day are substantially the same. None of them contains any jurisdictional facts. A finding of ''Guilty as charged'' is a nullity. *Funkhouser v. Coffin,* 301 Ill. 257.

█ In an attempt to obviate the insufficiency of the finding and decision on file on June 16, 1944, the date of discharge, defendants included in their return, dated back to June 16, 1944, a lengthy purported ''finding and decision'' which actually was not written up and filed with the Commission until June 22, 1944 in the Harrison case, June 20, 1944 in the Healy case, June 20, 1944 in the Cartan case, June 28, 1944 in the Klatzco case, June 29, 1944 in the Connelly case and June 24, 1944 in the Drury case. A discharge can only be ordered after a finding and decision is on file, approved and ceritfied to the appointing officer. Manifestly, if no finding and decision is on file, it cannot be certified to the appointing officer. The return shows that the purported finding and decision made and filed with the Commission in each case after June 16, 1944 was not in existence on June 16, 1944. The minutes of the Commission of that date show that it was not approved and was not the finding and decision certified

to the Commissioner of Police on that date. In fact, the purported finding and decision in each case made and filed after June 16, 1944 was never certified to the appointing officer. The discharge of each plaintiff was ordered and executed on June 16, 1944. The jurisdiction of the Commission was then exhausted. The subsequent preparation, typing and filing of the other documents purporting to be a finding and decision, was outside the limits of the jurisdiction of the Commission. Defendants argue that the action of the court in confining the return of the proceeding to and including June 16, 1944, was improper. We agree that the return should not have been limited. However, the error was harmless, as the writ did not stop short of the limits of the Commission's jurisdiction, but was co-extensive with it.

It would appear that defendants argue that the Commission may pronounce its finding and decision orally, by way of announcement, or by a brief record showing a conclusion of "guilty," certify such "finding and decision" to the appointing officer, thus discharging the employee, and whenever thereafter it chooses, perhaps when a writ of certiorari is served, make up and file a formal written finding and decision. This practice was followed in the *Henry Farmer* case, 329 Ill. App. 326. It is obvious that sec. 12 of the Civil Service Act and sec. VI of the rules of the Commission contemplates only one finding and decision by the Commission, and that this finding and decision must be entered prior to its certification to the appointing officer. We agree with plaintiffs that the purported "finding and decision" entered in each case subsequent to June 16, 1944 is no part of the return and is not responsive to the writ, and that the finding and decision actually entered on June 16, 1944 is a nullity. For that reason the trial judge was right in quashing the return.

Certiorari does not give the complaining party an opportunity to have the case retried. As

long as the Civil Service Commission had jurisdiction and followed the form of proceedings legally applicable, the court is without power to disturb the finding and decision, where there is evidence which fairly tends to sustain it. To review the evidence would be the exercise of executive powers which the constitutional separation of the departments of government precludes the courts from exercising. The purpose of the writ is in all cases to prevent injustice. However, the power to remove from office is not an arbitrary one. The discretion to be exercised by the Commission is not outside of the power of the court to control. It is subject to judicial review. While ordinarily the sufficiency of the evidence is not reviewed, an exception exists when the question is whether jurisdictional facts were or were not proved. Where it is claimed that there is no competent evidence to support the finding of the Commission, the evidence upon which it acted should be reviewed by the court to determine that question. Such a review is not a weighing of the evidence, but a review of a question of law. All of the ''findings of guilty'' drawn up and filed after June 16, 1944, fell within either of two categories: (a) the failure to enter in the station complaint books written communications received from the commissioner of police, and (b) failure to suppress gambling. Each plaintiff had an outstanding record in the police department. The records of these officers in the department are shown under the heading of Creditable Mentions and Extra Compensations for meritorious service. The evidence is unchallenged that no district commander at any time in the City of Chicago entered in the complaint books written communications received by him from the police commissioner. Such communications demanded and received special attention. They were kept in separate books and records in conformance with the long established practice and procedure of the department. Rule 31 of the

rules and regulations of the department of police provides how written communications from the commissioner (all confidential) shall be handled by the district commander. It provides that investigation of complaints directed through the commissioner's office shall be conducted by citizens' dress men. It was clearly an injustice to find these men guilty of neglect of duty, or conduct unbecoming a police officer because of failure to enter communications from the commissioner in the station complaint books, when such had never been the practice. The commissioner of police and the supervising captains knew that communications from the commissioner were not being entered in the station complaint books. It would be an entrapment for the commissioners of police to charge them with dereliction of duty in failing to make such entries without first informing them of his interpretation that the rules of the department required such entries.

The supplemental return contains a transcript of the testimony. The commissioners certified that the supplemental return "is a true, full and complete supplemental record of the proceedings had in the matter of the trial or hearing upon written charges filed before the Commission against plaintiff, Thomas Harrison, as the said supplemental record appears on file in the offices of the Civil Service Commission of the City of Chicago, . . . against the plaintiff. . . . " An examination of the transcript shows that no evidence was offered to support the charges of failure to suppress gambling. The evidence shows that where notice was given of alleged gambling activities, investigations were made immediately, which resulted either in (a) a report filed with the commissioner finding no gambling activities, or (b) raids, arrests, investigation and enforcement by arrest and prosecution, or (c) the maintenance of continued surveillance with reports from those assigned being made

directly to the police captain in charge of the district. The return shows that each plaintiff, through his district personnel, maintained vigilant and constant surveillance of all suspected or reported gambling locations in order to prevent violation of all gambling laws and ordinances, including "sneak," "one-day stand" and other "secret" operations, and the pursuit by the police in these commands of handbook operators who shifted their operations from place to place. The surveillance maintained was clearly established not only by the testimony of plaintiffs and their personnel, but also by the testimony of assistant state's attorneys and their investigators, together with the personnel from the gambling detail of the office of the commissioner of police.

In *Funkhouser v. Coffin*, 301 Ill. 257, the court said (261):

"Appellee has a right to a judicial review of the proceedings, 'and the record must show that the board acted upon evidence and contain the testimony upon which the decision was based, in order that the court may determine whether there was any evidence fairly tending to sustain the order.' *Tazewell Coal Co. v. Industrial Com.*, 287 Ill. 465; *Gloss v. Woodward*, 202 id. 480."

See also *Carroll v. Houston*, 341 Ill. 531; *Jarman v. Schuyler County Board of Review*, 345 Ill. 248; *Kilroy v. Retirement Board*, 297 Ill. App. 261; *Shilvock v. Policemen's Retirement Board*, 301 Ill. App. 84; *Tazewell Coal Co. v. Industrial Commission*, 287 Ill. 465; and *T. J. Forschner & Co. v. Industrial Board*, 278 Ill. 99. This subject is considered in *People ex rel. Fosse v. Allman*, 329 Ill. App. 296.

Defendants contend that they are not required to return a transcript of the testimony. We hold that where the action of the Commission in discharging an employee is challenged on the ground that the juris-

dictional requisites were not met, as in the instant cases, that the record must include the transcript of the testimony. The return and supplemental return in each of these cases not only fails to prove the charges, but it disproves the charges.

Each plaintiff was found guilty of charges which were admittedly withdrawn, of charges not made and of which he had received no notice and as to which the record contains no evidence. In addition to the fact that the transcript of the testimony in the supplemental return does not show failure to suppress gambling, the purported finding and decision discloses that in the Harrison case 69.77 per cent of the gambling incidents recited therein were not contained in the specification of charges; similarly, in the Cartan case the purported finding and decision discloses that 59.77 per cent of the gambling incidents recited therein were not contained in the specification of charges; similarly, in the Drury case the purported finding and decision discloses that 74.2 per cent of the gambling incidents recited therein were not contained in the specification of charges; similarly, in the Klatzco case the purported finding and decision discloses that 50.98 per cent of the gambling incidents recited therein were not contained in the specification of charges; similarly, in the Healy case the purported finding and decision discloses that 60 per cent of the gambling incidents recited therein were not contained in the specification of charges; similarly, in the Connelly case the purported decision and finding discloses that 42.85 per cent of the gambling incidents recited therein were not contained in the specification of charges; and similarly, in the Barry case the purported finding and decision discloses that 53.3 per cent of the gambling incidents recited therein were not contained in the specification of charges. While the members of the Commission undoubtedly acted in good faith in what they considered the proper performance of their

duties, in the condition of the record as to the findings we are of the opinion that justice requires an affirmance of the judgments.

We turn to a consideration of the complaint for mandamus filed by Lieutenant William Drury. After the judgment in the certiorari case quashing the return of the Commission, Lieutenant Drury filed a complaint for mandamus, praying for an order to compel the defendants to permit him to take a promotional examination for captain. A promotional examination for captain had been held in September 1944. Drury, a lieutenant, had been discharged by the order of the Commission on June 16, 1944. On July 12, 1944 he had demanded of the Commission that he be permitted to take the examination when held. On July 14, 1944 he was informed that he would not be permitted to take the examination. Defendants, answering the complaint for mandamus justified their refusal to permit him to take the examination because he was not a lieutenant of police at the time. They deny that he has shown by his complaint a clear legal right to the writ of mandamus. The writ directs the defendants to hold a promotional examination for Drury and to place his name, if he passes the examination, in the position on the eligible register, or list, of successful candidates in the September 1944 examination, to which his grade and examination will entitle him to be placed, with the same effect and the same relative position as if he had taken the September 1944 examination. Defendants point to sec. 9 of the Civil Service Act providing that all examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to such examination. They also call attention to sec. 2 of Rule 5 of the Civil Service Commission that no person shall be eligible for promotion from a position in any rank or grade to fill a vacancy in the next higher rank unless the position in which he is employed at the

time of examination is in the same branch and class of service as the position to be filled, and unless such person is at the time of examination actually employed in such branch and class, or is on leave of absence, or is eligible for reinstatement.

Defendants state that at the time of the holding of the examination in September 1944, Lieutenant Drury was not an employee of the City of Chicago, he was not on leave of absence, he was not in the next lower rank, and that he was then a stranger to the classified service. They rely on the principle that mandamus is not a writ of right, but an extraordinary remedy granted only in the discretion of the court and only upon the showing of a clear legal right to the relief sought. They assert that Drury completely failed to show that he has a clear legal right to the writ of mandamus; that the examination had been given when he filed his complaint for mandamus; that the questions given in the written examinations were already common knowledge among the members of the police department; that were the Commission to give him the same examination he would have a clear advantage over the lieutenants who had taken the examination; that were he given an examination embodying a different set of questions, the examination would not be competitive; that with the issuance of the writ of mandamus compelling the giving of an examination to him necessarily will disrupt the public service; and that those who have successfully passed the examination and are on the eligible register, will, if Drury successfully passes his examination, be disturbed in their places. Plaintiff points out that he served in the classified service of the city as a member of the police department for 20 years; that his service has been characterized by six grants of extra compensation for meritorious conduct and six other citations for exemplary and meritorious conduct; that he had received the Lambert Tree medal for exceptional cour-

age as a police officer; that he has been granted the
Chicago Tribune award for courageous conduct in the
course of his duty as a police officer; that he had
steadily progressed from the position of patrolman
to that of sergeant and to that of lieutenant; that in
December 1942 the commissioner selected him from
among other available lieutenants, to command the
38th police district in the capacity of acting captain;
that he served in that capacity until July 1, 1943; that
he was again reappointed to the position of acting captain of the same district on July 15, 1943 and remained
in that position until October 1943, when he was suspended; that the commissioner did not file charges
against him with the Civil Service Commission until
December 17, 1943; that the hearing on the charges
was not concluded until June 16, 1944, when the Civil
Service Commission entered the finding or decision
involved in the appeals of the certiorari cases; that
plaintiff instituted certiorari proceedings, seeking to
quash the proceedings of the Commission by which
he had been discharged; that in the meantime he
learned that the Commission was about to give a promotional examination to lieutenants of police to test
their capacity to be advanced to the position of captain of
police; that he demanded of the Commission the right
to take the examination; that on July 14, 1944 the Commission informed him that he could not take the examination; that the examination was given in September
1944; that plaintiff was not permitted to take it; and
that the Commission prepared and posted a list of
successful candidates. Thereupon, plaintiff filed his
petition for mandamus. We have held that the action
of the Commission in ordering the discharge of Lieutenant Drury was invalid. In our opinion it would
be unjust to deprive him of an opportunity to take
an examination for promotion to captain of police
which he could have taken had the invalid order not
been entered against him. We find that Lieutenant

Drury has a clear legal right to an examination for promotion to captain of police and that the judgment should be sustained.

For the reasons stated, the judgment of the superior court of Cook county is affirmed in each of the following certiorari cases: Gen. No. 43402, 43403, 43411, 43412, 43413 and 43414. The judgment of the superior court of Cook county is affirmed in the mandamus case Gen. No. 43388. Pursuant to the stipulation in *People ex rel. Barry v. Gregory,* No. 43324, this opinion will be filed in that case and a judgment of affirmance entered therein as in the other certiorari cases. This opinion will be filed in each of the above mentioned cases. The clerk will enter a separate judgment in each case in accordance with this opinion.

*Judgments affirmed.*

KILEY, P. J., and LEWE, J., concur.